Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and his honorable court. Thank you so much. Welcome, everyone. We appreciate your attendance at the virtual oral argument. A lot of our oral arguments are now live, but because this wasn't only one of today, we did make it virtual. Please remember to mute yourself when you're of the lawyers, not us, and unmute yourself when you, and it is your turn to speak. Please also recall that you are not allowed to take any photos or videos of this event. It will be available, the audio will be available online. And further, please recall that when you're referencing the record, we appreciate an actual record site and that rebuttal is only. And with that, we'll get started. And we'll begin with, and so I should state the name of what we're hearing, which is RLB v. Genesis 20-20540. And we'll begin with Mr. Grable for Genesis. Good morning, your honors, and may it please the court. Jeremy Grable on behalf of the appellant Genesis Energy LP. I believe I've reserved four minutes for rebuttal. At first glance, your honors, this case appears to present several difficult issues of federal law and procedure, including the interplay between civil procedure rule 17 and the prudential standing doctrine in general, and the shareholder standing rule specifically, whether RLB waived its rule 17 arguments that it is now pursuing in this appeal, and whether Genesis Energy LP, the parent company, or its subsidiaries are the real parties in interest. But we would submit that there's an easy solution to this case. And whether the court assumes those complex issues or analyzes them, if RLB has not waived their arguments, and if Genesis Energy, the parent and we believe mandatory solution in this case, which is the amendment of our claim below to add Genesis Energy's subsidiaries as co-claimants in this limitation action. The district court basically threw us out, dismissed our claim, because they thought we should have known better, and we should not have made a mistake. The district court thought we made a mistake in suing in the parent's name. We dispute that in this appeal. But even if that's correct, even if a mistake was made, it was a reasonable mistake. And the district court's remedy... Okay, let me ask you about that. They keep referencing, your opponent keeps referencing the January 2020 alleged lie that y'all were the sole owner of the pipeline. How do you explain that lie? Well, Judge, we don't think it was a lie. Looking back in hindsight, it was a regrettable mistake. But in order to understand it, I think you have to understand how this case got started. This case was always a two-party dispute between RLB and Genesis Energy. The parties were communicating before RLB even filed its limitation petition. We passed all of the damages documents to RLB's original counsel, including letters from the United States Coast Guard and other vendors, where Genesis Energy, the parent company, incurred certain debts as a result of this incident. RLB then files for limitation, and RLB lists Genesis Energy, the parent company, as the interested party. They did not list the subsidiaries. They had all of our documents, which disclosed the subsidiaries' role. They listed the parent company. And so when we filed our claim and limitation, a few months later, we filed on behalf of the parent company. So for the first year of this case, everybody was really operating under what I guess I would as a shorthand or a convention of just general and imprecise conceptions of ownership. I mean, does Genesis Energy, the parent company, own the pipeline? In a general sense, yes, because our wholly owned subsidiaries own it. Does it technically own it as a direct owner? Well, no. But nobody ever complained about that. Nobody ever raised an issue about it. So by the time we get to the discovery in January, almost a year later, it was sort of an assumed fact from our perspective that Genesis Energy owned the pipeline. And so we were looking back on it. It was a regrettable mistake. But by that point in time, too much time had passed, in our opinion, for this issue to have been raised. Was there anything that happened at kind of the last minute that prompted their motion when it was filed? Judge, I don't really know the answer to that. I think, you know, this court has held that these sorts of real party and interest issues are supposed to be easily resolved at the beginning of the litigation. That's the Rogers case from 2002. And, you know, they changed counsel a year into the litigation. RLB, we were dealing with an initial counsel. They changed counsel in, I think, August of 2019. And, you know, I don't know the answer to that. But nobody ever called us, which is how these issues are usually resolved. You know, somebody names, you know, Lloyds of London, and it's supposed to be certain underwriters. That happens all the time. And you just pick up the phone and call somebody and you fix it. It's the proposed amendment here was... Yeah, but they like their mechanism under which if we affirm, they won the case without having to get into the merits of the Well, that's true, Your Honor. But this court has been very clear that that is not the way to approach these issues. I mean, the court in the Signal case has described that tactic as, quote, laying behind the log and ambush. I mean, if you're going to raise a real party and interest objection, you have to do it when Joinder is practical and convenient. Again, that's a quote from the Rogers case. Rogers and Signal and Rideau, those are sort of the three big cases. I think if the court focuses on those cases, they really direct the way that this should come out. But I don't think this court should be condoning that type of conduct to lay in wait for over a year when they did finally file this motion to dismiss in June of 2020, almost two years after the litigation began. They didn't call us. They didn't email us. They just launched this motion with over 500 pages of exhibits, various documents that we had produced a year before in initial disclosures, various public documents that they had access to all along, and they styled it as a jurisdictional challenge. They didn't even make a Rule 17 argument. This court in the Ensley case, I think it was, said that it's not uncommon for parties to real party objection as a jurisdictional objection because obviously jurisdictional objections cannot be waived, but real party and interest objections can be waived. So it's a common tactic, but this court has constantly said that is not the appropriate tactic. So what would happen if we were to reverse and send it back and say you should be able to join the subsidiaries? What additional discovery would need to happen? I mean, additional work would RLB have to do? So as a result of this amendment, Judge, I don't believe there would be any substantive change. This would be a nominal fix. We proposed a second amended claim, which is in the record at page 1691 that was attached to our motion for leave. The only change would be to the listing of claimants to address this apparent concern about real party status. The case was, we were not quite to trial. I think when the motion was filed, there have been several extensions of the deadlines, but all of the key deadlines have passed. The deadline for filing claims and limitation, the deadline for amendment of pleadings, all those deadlines have passed, which again, we think supports the waiver argument, and the motion was filed about a month before discovery was set to close. So I think there may be a little more discovery that was contemplated, but nothing would change because of this. All of the facts, all the documents are the same. It's just a technical issue about who the proper party is. Was there anything y'all didn't have possession of or any witnesses or whatever that would come to the floor because of the addition of these subsidiaries if that happened? No, not that I'm aware of, Judge. It's like I said, it's a pretty straightforward case. We've already disclosed all of our damages documents. So the discovery yet to be done in the month before would have been the same regardless of whether it's just Genesis or whether it's Genesis Plus, absent, of course, affirming. Correct. Correct. I think we were trying to take a deposition or two of RLB personnel. They objected to that in light of this motion, and so I think there's a little bit of discovery we wanted to do. I'm not sure that there's, and maybe counsel could speak to this, I'm not sure there was any additional discovery that RLB had asked for. But in any event, any additional discovery would not be impacted by this amendment. This is a nominal fix, and we cited a case from the Second Circuit which says when the fix is non-substantive and nominal like this, it really is a technicality and it really should be allowed. I mean, this court, I know the standard of review on that question of the amendment is abuse of discretion, but this court frequently reverses district courts when they impose this harsh remedy of dismissal instead of allowing for the Rule 17A3 remedy. The Rideau case that we've talked about, the McGollin case is a 2006 decision, 453 F3D 268, and the Weiberg case, 272 F3D 302. All of these cases, the Fifth Circuit has a holding that, yes, a mistake was made, but it was reasonable. There was a reasonable basis for the decision to sue in a certain party's name. And instead of dismissal, the court is finding to serve the purposes of Rule 17, which is to prevent forfeiture. I mean, that's explicitly in the advisory committee's notes. The purpose of this rule is to prevent forfeiture. And so the court is constantly reversing district courts and directing the amendment to be allowed. This is a significant issue. We've got multi-million dollars in claims, in damages, and we've been thrown out on this technicality that wasn't presented to us until almost two years into the litigation. And within eight days of receiving RLB's motion, we filed our 17A3 motion. So immediately upon this issue being raised, we sought the Rule 17A3 remedy. And as the district court correctly held, there would be no prejudice to RLB. And that's an important issue. We also asked for leave to amend under Rules 15 and 16 because the scheduling order deadline had expired, so it would be governed by Rule 16. And I think we have good cause for amendment under those rules. Again, this issue did not come up until the last minute. One question. Opposing counsel in their letter to the district court, they said, well, there is a claim under the federal statute, but there is also just general negligence claims in this case. And I don't think that issue would govern every single claim in the case. I also don't think that they have preserved that Rule 17 argument. I mean, in addition to the implicit waiver, just because of the district court's decision,   delay in raising the issue, when we pointed out below that this was really a Rule 17 issue, RLB doubled down and said, no, it's not. This is Article 3 standing. This is constitutional standing. This is subject matter jurisdiction. And they went so far as to say things like Rule 17 does not apply. And if we thought this was a Rule 17 issue, we would have filed a Rule 17 objection. I have those references. I want to just give you those references. Those are on pages 1784 and 1953 of the record. Those are explicit statements below by RLB that they're not invoking Rule 17. So, Judge, I don't think that those issues in there, you know, there may be some interesting and difficult issue there. I don't think that's been preserved. And more importantly, even if the court were to reach that issue and to conclude that the parent was not the proper party, I still think that all of the unique circumstance here, where from day one, everybody was dealing with Genesis Energy, all the invoices were incurred by Genesis Energy. I think that at most, if there was a mistake, it was reasonable. And we should be allowed to this remedy to cure it. You argue that the district court goofed in failing to analyze Rule 17. But you also say that remand isn't necessary because the court, nonetheless, kind of erred on the merits. And you say remands just, we shouldn't remand. And explain that for me, why you want this panel to address Rule 17 in the first instance, rather than give the able district court first crack at it. Well, for a couple of reasons, Judge. First, the district court's opinion is a little ambiguous on that point. He does talk about Rule 17. He does recognize that this issue is more appropriately considered under Rule 17. He does analyze our waiver argument under Rule 17. We think he got that wrong. And that's certainly something that this court could deal with on the first instance. But the district court then went on to analyze this shareholder standing concept under prudential standing. And honestly, I don't know that there's any value in going back and letting the district court look at this again. I think that for all intents and purposes, the district court effectively analyzed these issues under Rule 17. Although, like I said, he allowed some of these prudential concepts to creep in. And they really are legal issues. I mean, I fall back on the Rogers case, again, which says these issues should be easily resolved. And here we are a year later, and we're fighting about these issues. And a remand to the district court, and then perhaps another appeal if he reaffirms his decision to essentially punish us for not knowing about our corporate structure, or not changing it, even though nobody objected. I just think that would add a whole other year to this, Judge. And I think this court, in most of these cases, is happy to send these back with instructions that the Rule 17a3 remedy be provided. So the main goal that you're asking for is for us to vacate, remand, to allow you to amend, to join the subsidiaries, and call it good. And then just get back to the day that they filed their 12b1 motion and finish out the case. That's what you're asking for. That's absolutely correct, Judge. I think that's the straightforward, the fair solution. And that's exactly what we're asking this court to do. And again, the court may or may not feel compelled to analyze the waiver question on the merits and or the real party interest question on the merits. But even if it were to assume we lost on both of those, we're squarely within the 1783 world of amendment. And yes, we think this case should be remanded with that instruction so that we can proceed to the merits and decide this case on the merits, which is ultimately, I think, what this court and the federal rules strive for. You know, we should not be encouraging people to lay in wait and to raise these issues at the last minute and to get out of cases on technicalities. So my time is almost up. I'll ask the court to reverse the district court and remand with those instructions that the subsidiaries be added as co-claimants. Thank you. Thank you. Okay, we will now hear from Mr. Trachtenberg. Good morning, Your Honor. Mark Trachtenberg. May it please the court for RLB contracting. I'm going to focus my argument on the two points Mr. Grable made. First, that the district court did not abuse its discretion in denying Genesis Energy League to add its subsidiaries either under Rule 17A3 or Rule 16B. And second, that the district court did not abuse its discretion in holding that RLB did not disclaim or waive its prudential standing or Rule 17 objection. If I have an opportunity to make the third point that's addressed in their brief, I'll address the point that Genesis Energy itself was not a real party in interest just because it was billed for cleanup and repair costs when it did not in fact pay those costs. So let me turn now to the leave to amend argument that Mr. Grable began with. Yeah, and can you address straight up if we were to do what we just talked about doing, you know, vacating, remanding, causing the amendment, and then taking us back to the day y'all filed your 12B1, what additional work would you have to do that you wouldn't have otherwise had to do if this 12B1-17 prudential standing point was never made? Your Honor, yes, let me address that. We're not relying on, I think the district court did not find prejudice on our part. That was not the basis for his denial of the motion for leave. He was focused on the inadequacy of the explanation offered and certainly that's the point I really want to focus on here too. So you agree that if we went back in time to that moment but flipped the way it came out, it would not cause you additional work that you wouldn't have otherwise had to do to prepare for the merits? I must confess, I came in as appellate counsel and not as trial counsel, so I may not have a full grasp on the extent of the discovery and I apologize for that. But I can just say here the prejudice argument is not our focus in terms of additional discovery burden. Can you explain the difference between this case and Radu? Because in Radu, they knew about the guardian. I mean, they were part of getting the guardian appointed for their kids, so they were well aware of the existence of this guardian and yet didn't raise it. And so if knowing about X and Y is enough to say, well, it's unreasonable what you did, then that case would have come out the other way. Sorry, I didn't mean to cut you off, Your Honor. Have you finished your question? Yeah. I'm sorry in Radu is that the parents there were uncertain as to the legal effect of the existence of the guardianship. I think that was the court's point was that they didn't know whether the guardianship was exclusive or not. That was a legal question that it took some effort for the Fifth Circuit to figure out in that case. So in that case, the Fifth Circuit did find an understandable mistake of law. Here, I want to emphasize that this leave issue was not decided in a vacuum. I think it's important to focus on the arguments that were before the report in that motion. And here, Genesis's lead argument, the primary excuse they offer for filing in their own name was a conclusory and unsupported assertion that, quote, the ownership structure of the Genesis entities and the Tomcat pipeline is relatively complicated, close quote, and that, quote, in the year before the incident at issue, numerous changes in ownership and name changes occurred. That's that ROA 1322. And it turned out that neither statement turned out to be true. As the district court noted, and based on the filings that we presented, according to documents that were provided to the U.S. Army Corps and the Calhoun Court Authority, Tomcat pipelines have been owned by Matagorda Offshore since 2015. And all four entities at issue have had the same name since 2015. Further communications to the Calhoun Court Authority about the pipeline were made under Matagorda Offshore letterhead as early as 2016, and again in July 2019 by a senior officer coming to all four. But what about the arguments that they were incurring invoices and bills? I understand that they ultimately paid them out of the subsidiaries, but that they were incurring those that the government was calling them out directly, and so on, that made this more complicated in their view. Well, it's hardly complicated. They incurred bills because they were the ones sending them out. As far as the Coast Guard is concerned, the letter of the Coast Guard that sent to them naming Genesis Energy as a responsible party was based on communications they had with the Coast Guard. But importantly, the letter itself says, if you have any evidence that would refute the assertion that you're the responsible party, please forward it to me at your earliest opportunity or call me at the toll-free number below. That's directly in the letter at ROA 1336. Coast Guard had no way of knowing Genesis Energy's corporate structure, and Genesis Energy could have provided proof that it wasn't the proper entity. Isn't that evidence that Genesis Energy thought it was the proper entity? I go back to the point that they were sending letters to the Calhoun Port Authority under Matagorda Offshore letterhead as early as 2016, again in 2019. I don't think there was any mystery. I think that they thought that because it was a corporate family that they could just act in the capacity of Genesis Energy. But simply by incurring, reaching out to repair companies, or you can't create prudential standing that way. They're not the ones. First of all, they didn't pay the costs. They don't have any kind of claim for recovery of the costs. But just simply by sending out an invoice. If they think they're the parent of the family, the way the Reduz did, and then that turns out to be wrong, and we think the subsidiaries should have been part of the deal, why not allow them in? I understand that there's an order of the court about deadlines and stuff. I get that. But those can be altered. I'm just struggling to resolve non-appearance. Your Honor, it's the same result that was in the BCC merchant case from Judge Boyle in the Northern District of Texas. Exact same fact scenario there. That's the 129 F sub 3rd 440 case, where a parent company should have filed suit even though its subsidiary was the contracting party, and it should have known. And that case points to four other cases, all other district court cases, all in this circuit, where they denied leave under 1783 under analogous circumstances. I have deep respect for our district judges in this circuit, but can you tell me your best Fifth Circuit case on your side? I think they all set forth this standard of reasonable basis for naming the wrong party. That has to be the result of an understandable mistake. And I think when you're under the abuse of discretion standard, and their lead argument to the district court is an unsupported and incorrect statement that they easily could have known was wrong, I think the district court was well within its discretion under 1783 to say that's not a reasonable basis for... And what's your best case for us where we supported, we found no abuse of discretion for that kind of a ruling in this kind of a context? What's your best case on that? I'm struggling to go beyond the BCC merchant merchant cases. I know it's a district court case. I'm blanking on any Fifth Circuit authority on that. Mr. Graybill did point out that, again, we have deep respect for our district courts, and we recognize the abuse of discretion standard and what's all involved in that. And yet, we have reversed in several of these cases. Exactly, Rado being one of them, I was on the panel that doesn't make it any more or less of a precedent, but I can remember the situation. And so, I mean, the district court came out the other way there, too. So, I mean, abuse of discretion, while a respectful standard of review, is not the same thing as saying it's unappealable. I think that's right, Your Honor. But I think we're due, you're talking about parents of a disabled child who, again, were asked to make a, understand a legal issue about the exclusivity of a guardianship relationship. I just think that's miles from a situation where you have a district court here, you have a sophisticated corporate, sophisticated parties on the other side, and you have a statement to the district court, your lead argument in your motion for leave, is just unsupported and wrong. And based on that, Well, it was so obvious, why did y'all wait till June or whatever of 2020? Why not file your motion sooner? Well, we were relying on their representations and their pleadings and their discovery responses that they were the owner of the Tomcat pipeline. And certainly, we should be entitled to, you know, rely, if they're going to affirmatively represent ownership as part of a discovery response, we should be able to rely on that admission and not have to go- But you didn't rely on it forever. I mean, at some point, you decided to file this motion. I'm just saying, you had this pile of documents that your counsel opposite says you had for a year. Why wait the year? That's what I'm trying to understand. I mean, it's one thing to say, we accepted that all along, and then they denied it in the middle of trial or something. That's a whole different world. But they're just rocking along, continuing to make the same assertions. And y'all decide, no, you're lying, or we're going to move under 12B1, not 17. But anyway, whatever. And you attached all these documents. Why didn't those documents get your attention sooner? The short answer is, Your Honor, we had new counsel came in and began and conducted investigation. And once they figured out that every responses in their pleading were incorrect, they promptly moved to dismiss. But the bottom line is- It wasn't obvious to prior counsel. I mean, again, look, I get wanting to win on a technicality, and I was a lawyer in my old days. I won sometimes in technicalities. I'm not in any way refuting that or saying that's a bad thing. But at the end of the day, our case law is that we prefer cases to be decided on the merits. It doesn't mean we don't affirm technicality issues. But that is what we prefer. And y'all clearly knew that because filing a 12B1 suggests that you think this is something that needs to be something that can be raised at any point, as opposed to something that should be raised sooner rather than later, like a 17, or even a prudential standing. Well, again, the district court's analysis of this issue, again, under abuse of discretion standard is- His points were twofold. Number one, why should we know the corporate structure of Genesis Energy better than they did? And then, two, I mean, I know we're not- When they're affirmatively representing that they are the owner of the pipeline, why should we have a duty- I mean, if a party files a request for admission and admits a fact, why should we have a duty to start searching public records to find the truth that the fact has not turned out to be truthful? So the district court, again, under abuse of discretion standards, found that we did not wait too long to assert this objection and also made the point that most of the waiver cases from the Fifth Circuit relate to the objection being raised right at, or during, or after trial. We're here in this case. We were well before any trial of this claim. So I think the district court's analysis under abuse of discretion standard is right, that we did not have a- Let me ask you about Signal. Oh, I'm sorry. Real quick, and then we want to hear from Judge Grace. In Signal, it says that a Rule 17 motion to dismiss is timely so long as joinder of the real party remains practical and convenient. Since y'all are saying it doesn't remain practical and convenient, then how is it timely? My understanding of that standard is that it's certainly very fact-dependent, and you look to the circumstances of the case. I don't think there's a hard and fast rule that you always have to allow for amendment just when there's opportunity to be filed, or else you would never have a firm dismissal on these basis. This was really a problem of their making. They should have known all along what their corporate structure is. They clearly, in their communications to the Calhoun County, knew back in 2015 and 16 what their corporate structure is. This is a mess of their own making, Your Honors, and we believe the abuse of discretion standard should give us a sense of what is important here. I want to make one more point on abuse of discretion, too. Now, Judge, Grace had a question for you. In talking about this abuse of discretion, it seems like the District Court focused on its determination that Genesis Energy's primary argument was that they had this complicated corporate structure. That seemed to be what the District Court focused on, but it just seems to me that Genesis Energy mainly argued that they could file a lawsuit in their own name for their own injury, that they believe they could file that lawsuit because it was their own injury, not that there was this complicated corporate structure that is the reason for the mistake, but just their mistaken belief that they could file a lawsuit. Their lead argument below, at least, I know it's changed a little bit on appeal, but their lead argument below was the complicated corporate structure and name changes argument, which is at ROA 1322. Again, that was all incorrect. Your lead argument was 12B1, Article 3 standing, and you aren't even making that anymore. You said, well, but we also said prudential standing. Well, they also said we thought we had our own injury because we owe these bills. But to address Judge Graves, your point, I think the District Court addressed both arguments. So it wasn't relying only on the complicated corporate structure argument, although I do think it's very important that under abuse of discretion standard, if your lead argument turns out to be a misrepresentation, that that gives the District Court a lot of discretion to deny it, but they do. But the judge also rejected the incurred cost point as well and said that argument was so flimsy that it didn't give rise to, it didn't support a leave to amend either. And if I have just a few minutes left, I'm happy to address that threshold point about whether Genesis Energy itself is a real party in interest. And there, I think it's, again, it's not the receipt or the letter, it's not receipt of a letter or invoice, but rather the payment of the repair or cleanup costs that give rise to the claim. And here it's undisputed that the subsidiaries and not Genesis Energy paid those costs. And under the shareholder standing rule, Genesis Energy can't bring a claim for recovery of those costs based on behalf of the subsidiaries. Again, I made the point about the Coast Guard letter. And just to Judge Willett's point on the Oil Pollution Act claim, that's clear under the statute that to bring that claim, you have to be the owner or operator of the pipeline and you have had to pay the costs first before you seek contribution or subrogation. So under the plain language of that statute, it should have been clear to Genesis Energy that it was not a responsible party, did not have prudential standing, and also should have put them on notice with respect to their other claims as well, that they were not the proper party to oppose. If we were to conclude that this really is a Rule 17 case, do you agree that the judge has already addressed Rule 17 or do you think we would need to remand on the Rule 17 point, if that's what we concluded? I believe he's addressed it on page 7 of his opinion. He describes our argument as more appropriately characterized as a real party and interest argument governed by Rule 17. He references in the next paragraph on page 7, a prudential standing argument under Rule 17 must be made in a certain time and also addresses 1783, the lead point under Rule 17. I've read a lot of standing cases since the panel sent out its request the Friday before last and I've tried to find a difference between prudential standing and I have to confess, I think it's pretty much the same inquiry, at least with respect to the third party prudential standing rule. So if there's a difference between the real party interest inquiry under 17 and third party prudential standing separately, I have not been able to ascertain it. So if we're looking for y'all to have agreed on something, then that sounds like something y'all to allow the subsidiaries in, that those are our choices. There's not some third choice. I think that's right. And then we also agree on the capacity issue too. We don't think there's a capacity issue here as well. So there are a few points of agreement, your honors. It's always nice. Well, unless the panel has any more questions, I've, I think I've made the points I want to make and I'll yield the balance of my time back to the court. All right. We appreciate that. We'll turn back for the rebuttal. Thank you. Thank you, your honors. Just briefly, I want to just hit a couple of points. I think I've made my general point, but counsel cited a couple of times our opposition to their motion to dismiss when he's talking about what our lead argument was. If you look though at our motion for the district court, it was that we incurred the costs and we received the Coast Guard letter and that Genesis Energy is the real party in interest. So those, that issue was briefed to the district court and the district court did address and reject that. And I think the Rideau case answers that pretty clearly. And it doesn't, it sort of does so in passing and it suggests Judge Costa's opinion in that case suggests that it's really not that complicated of an issue, but he says that the parents, that the fact that a third party pay or paid those medical expenses does not deprive the parents of standing that would otherwise exist as a result of incurring that obligation. And as my opponent, we looked for other cases. We couldn't find anything on that. I think that's a, if the court to go down that path, I think that's a complicated issue of, of, of standing and real party status. So again, at most it's a mistake, an honest and good faith mistake of law. Judge Haynes, you asked. Mr. Grebel, how do we avoid parent companies just coming in and kind of flopping around for a year and a half if we were to go your go reverse and remand for amendment and all that? Well, I think cases like this, this case could have been litigated with the parent company. And then that happens, you know, fairly commonly, I think, I mean, the parent company does own this pipeline in an indirect sense. But the way to solve that judge is, is to encourage parties. If they want to make that objection, they have to do it at the beginning of the case in a timely way. And if there's any merit to the objection, rule 17 provides the remedy. And it says that we're going to allow parties to generally fix those sorts of technical defects if, if there is in fact a defect. So there's really, again, there's no magic to it. The case is what it is. It's a two-party dispute. And, you know, I just don't see any, any prejudice to, to RLB in letting us fix it. Mr. Grebel, just to get clarification, I thought earlier you and I had a brief little back and forth, and I thought that you did not favor remand, that you thought this panel should address the rule 17 merits instead of sending back to the district court to handle that. And did I mishear you or? No, no, that's correct, Judge. That's correct. I'm sorry if I suggested otherwise there a minute ago. No, I think that as Judge Haynes set out with a minute ago with opposing counsel, there's two choices. You either affirm it or you reverse and remand with instructions for the subsidiaries to be added. I don't think we need to, I don't think we need to remand. We have to remand because you'd have to try the case on the merits, right? You have to remand, but not for an analysis of Rule 17. I'm sorry, that may have been. Judge, all I'll say is you asked counsel for his best Fifth Circuit case. There is no Fifth Circuit case that I've found that affirms a harsh dismissal in this context. They all reverse and amendments. So that's what we would ask that this court do in this case. Appreciate your time and we thank you. Okay, Judge Will, I'm sorry. Did I interrupt you or did you have anything? No, no, I'm good. Appreciate it. Okay, Judge Graves, anything else? Nothing further. Okay, we thank you both very much. The case is now under submission and we'll ask the courtroom deputy to excuse you from the courtroom.